UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WILLIAM and CYNTHIA KLUDAS,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>PRICE PFISTER, INC.,<br><br>　　　　Defendant. | CASE NO. C04-580JLR<br><br>ORDER |

## I.　INTRODUCTION

This matter comes before the court on a motion in limine from Plaintiffs Cynthia and William Kludas (Dkt. # 38) and two motions in limine from Defendant Price Pfister, Inc. ("Price Pfister") (Dkt. ## 41, 42). Having read and considered all papers filed in support of and in opposition to Plaintiffs' motion, the court resolves each motion as discussed below.

## II.　BACKGROUND

Plaintiffs, former owners of a home in Issaquah, Washington, brought this action to recover damages to their home and personal property that resulted from a leak in a faucet that Price Pfister manufactured. Price Pfister admits that its faucet caused a flood that damaged Plaintiffs' property. The remaining disputes are over the amount of the damages to Plaintiffs' residence and 457 items of personal property.

ORDER – 1

All three of the motions in limine concern the evidence that the parties can use to prove damages. Price Pfister seeks to limit Mr. Kludas' opinion testimony on the damages to the Kludas residence, and to exclude the testimony of Tammy Valley, an appraiser who intends to offer expert testimony on Plaintiffs' real property damages. As to the damages to Plaintiffs' personal property, Plaintiffs challenge the law governing those damages, and seek to exclude the testimony of Darrell Lee, Price Pfister's personal property damage expert. Price Pfister contends that the court should not permit Plaintiffs' personal property valuation expert, James Heiden, to testify. Price Pfister also challenges the scope of opinion testimony that Plaintiffs may offer on their personal property damages, and seeks to exclude a spreadsheet detailing damage values for all 457 items of property damaged in the flood.

### III.   DISCUSSION

**A.   Real Property Damages**

**1.   The Court Will Permit Mr. Kludas to Offer Limited Expert Testimony.**

Plaintiffs intend to offer Mr. Kludas' testimony to demonstrate the extent of damages to their real property. Mr. Kludas would testify about his personal knowledge regarding the property, and also his opinion regarding the value of the property. Price Pfister argues that Mr. Kludas cannot qualify as an expert and thus cannot offer opinion testimony.

Like proverbial ships in the night, the parties advance mutually exclusive views of the law governing the admissibility of Mr. Kludas' testimony. Plaintiffs cite Washington law, which permits a property owner to testify concerning the market value of his or her property. Washington courts hold that a property owner "is presumed to be sufficiently acquainted with its value and the value of surrounding lands to give an intelligent estimate of the value of his property." State v. Wilson, 493 P.2d 1252, 1257 (Wash. Ct.

ORDER – 2

App. 1972) (cited in Port of Seattle v. Equitable Capital Group, Inc., 898 P.2d 275, 279 (Wash. 1995)). Even in Washington courts, however, a property owner's right to give opinion testimony is "not absolute." Equitable Capital Group, 898 P.2d at 279. Price Pfister relies on federal law, which takes no specific notice of property owners, and instead requires the trial court to serve in a "gatekeeping" role for all expert testimony. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999). In Kumho Tire, the Supreme Court announced that the standards it had established for the gatekeeping function in Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993), applied to all testimony admissible under Fed. R. Evid. 702. 526 U.S. at 149. Price Pfister seeks to exclude Mr. Kludas' testimony because it does not satisfy Daubert standards, whereas Plaintiffs ignore federal law in favor of Washington law. Neither party addresses whether state and federal law conflict here, nor how the court should resolve the conflict under the principles first enunciated in Erie R. Co. v. Tompkins, 304 U.S. 64 (1938).

The court finds no conflict between Washington and federal law regarding Mr. Kludas' testimony. To exercise its gatekeeping obligation under federal law, the court must examine all opinion testimony to determine whether it is "based on scientific, technical, or other specialized knowledge," whether it "would assist the trier of fact in understanding the evidence or determining a fact in issue," whether the expert has "special knowledge, skill, experience, training or education on that subject matter," whether "the testimony is relevant and reliable," and whether the "methodology or technique the expert uses 'fits' the conclusions . . . ." United States v. Hankey, 203 F.3d 1160, 1168 (9th Cir. 2000). In assessing relevance and reliability, the cornerstone of the gatekeeping function, the court has discretion to consider a variety of factors. Id. at 1169; see also Fed. R. Evid. 702 advisory committee's note (2000) (listing possible factors, noting that they are "neither exclusive nor dispositive").

ORDER – 3

Although Washington's recognition that a property owner can give opinion testimony on its valuation does not expressly recognize Kumho Tire or Daubert, it captures the essence of federal precedent in noting that property owners have specialized knowledge about some aspects of valuing their property, but not about others. One who owns property is "sufficiently acquainted with its value and the value of surrounding lands to give an intelligent estimate of the value of his property . . . ." Wilson, 493 P.2d at 1257. A property owner cannot, however, offer opinions that exceed the bounds of his specialized knowledge. E.g., State v. Larson, 338 P.2d 135, 136 (Wash. 1959) (striking landowner testimony where "the owner ha[d] not used his intimate experience with and knowledge of the land's uses as a basis for determining its fair market value"); Equitable Capital Group, 898 P.2d at 280 (affirming exclusion of landowner testimony that "provided no method, reasoning, or explanation" for his opinion as to cost per square foot); State v. Rowley, 444 P.2d 695, 697 (Wash. 1968) (striking testimony where landowner failed to provide "supportive evidence" for his price estimate).

The court holds that Mr. Kludas can testify regarding the valuation of his home, but limits his testimony to opinions based upon his specialized knowledge as a property owner. The court intends that principle to serve as a guide in preparing Mr. Kludas' testimony for trial. To illustrate the principle, the court applies it to the portions of Mr. Kludas' proposed testimony that Price Pfister highlights in its motion. The court will permit Mr. Kludas to testify about home values in his neighborhood, and his efforts to sell Plaintiffs' home both before and after the flood. He may also offer opinions based on his personal knowledge of the construction of his home and other homes in his neighborhood. Mr. Kludas cannot, however, offer opinions based on knowledge he acquired from internet or newspaper research or from speaking to realtors. This necessarily limits Mr. Kludas' proposed testimony about the "CLUE Report" that

ORDER – 4

Plaintiffs' insurance company generated regarding Plaintiffs' insurance claims for damage resulting from the flood. Although Mr. Kludas can testify as to his knowledge of the existence of the CLUE Report, and how potential purchasers of his residence could become aware of the Report, he may not offer testimony regarding his research on the effect of CLUE Reports, as that testimony would exceed his knowledge as a landowner. He also may not offer opinions regarding the decrease in his property's value due to the CLUE Report, as he has no foundation for that opinion beyond his independent research on CLUE Reports generally.[1]

### 2. Testimony of Tammy Valley

In addition to Mr. Kludas' testimony, Plaintiffs intend to rely on opinion testimony from Tammy Valley, who is purportedly an expert in real estate valuation. Although the court extended the discovery cut-off in March 2005 to accommodate Ms. Valley, Plaintiffs do not dispute that she has not made herself available for deposition. Plaintiffs offer a litany of reasons why she has been unavailable (including her own illness, her mother's illness, her work schedule, and jury duty). These reasons do not excuse a complete failure to submit to deposition. The court will not permit Ms. Valley to testify.

## B. Personal Property Damages

### 1. Washington Law Requires the Jury to Consider a Range of Damage Measures, Not Limited to Fair Market Value or Replacement Value.

In denying Plaintiffs' summary judgment motion, the court reviewed Washington law as it applies to personal property losses, and held that the law did not support Plaintiffs' assertion that fair market value was an impermissible measure of damages:

---

[1] The court will permit Plaintiffs to attempt to qualify Mr. Kludas as an expert on subject matter beyond his specialized knowledge as a landowner. On the record before the court, Plaintiffs have not made the required showing. If they wish to do so at trial, they must do so with an offer of proof made within the time the court allots for presentation of evidence at trial.

ORDER – 5

> Under Washington law, market value is the ordinary measure of damages for personal property that is a total loss as a result of negligence. McCurdy v. Union Pac. R.R. Co., 413 P.2d 617, 623 (Wash. 1966). Replacement cost is the measure of damages only if the property has no market value. Id. As a general rule, "such things as family photographs, writings, antiques, clothing, paintings, plans of architects, engineers, etc.," have no market value. Id.; see also Kimball v. Betts, 169 P. 849, 850 (Wash. 1918). Plaintiffs treat this general rule as an absolute prohibition on establishing a market value for their personal property . . ., [but] [t]he law does not support Plaintiffs' interpretation. Although Plaintiffs need not prove that their household goods "have no market value as a condition precedent to the right to introduce proof of actual value" (Kimball, 169 P. at 850), Price Pfister retains the right to present evidence that particular items in Plaintiffs' inventory have market value. McCurdy, 413 P.2d at 623.

Order at 3-4 (Dkt. # 37).  Plaintiffs challenge the court's ruling as a "manifest error of law."  The proper means to make this challenge is through a motion for reconsideration.  Local Rules W.D. Wash. 7(h).  Plaintiffs did not timely move for reconsideration.  Even if they had, the court finds no error in its summary of Washington law.

To guide the parties at trial, the court makes the following additional comments.  Both parties adhere to a narrow view of personal property damages.  Plaintiffs insist that replacement value must govern and that market value is irrelevant; Price Pfister insists on the opposite. Washington law recognizes that a broad range of evidence, including evidence of market value and replacement value, is relevant in cases like these.  For example, in a case involving lost camera film, the Washington Supreme Court approved the following jury instruction:

> You must determine the amount of money which will reasonably and fairly compensate plaintiff for such damages as you find were proximately caused by the negligence of any one or all of the defendants.
>   In reaching your verdict you should consider the following elements: the value of the film to the plaintiff, the actual or intrinsic value of the film including cost of film and processing such film *and such other considerations as will fairly and justly compensate plaintiffs for any loss sustained* had the damage in question not been sustained.
>   . . . The law had not furnished us with any fixed standards by which to measure value to plaintiff or actual or intrinsic values of lost property to its owner. With reference to these matters, you must be governed by your own judgment, by the evidence in the case and by these instructions.

ORDER – 6

Mieske v. Bartell Drug Co., 593 P.2d 1308, 1311 n.1 (Wash. 1979) (emphasis supplied). The jury may consider numerous measures of damage in order to select the measure that appropriately compensates the property owner. No single measure of damages is dispositive. Even though the law recognizes that some items of personal property "cannot in any fair sense be said to be marketable and to have a market value," Kimball, 169 P. at 850, the law permits the jury to make that determination. McCurdy, 413 P.2d at 624. For example, in Massey v. Tube Art Display, Inc., 551 P.2d 1387, 1389 (Wash. Ct. App. 1979), a case involving the destruction of "drawings, plans, sketches, prototype machine components, castings, and other work products" in a construction accident, the court approved the following broad jury instruction:

> In determining [the property's] true value and the damage sustained by the owner, *you may take into account any and all factors which might give a measure of its true value* including but not limited to the original cost of the property, if ascertainable; the reasonable cost of restoring the item, if that be possible; the contemplated uses of the items, if uncompleted; whether it might have had a value when completed and the amount of such value, taking into account the costs, if any, of completion, *and all other items which reasonably appear to you as being measures of its true value* when destroyed, exercising your common sense and judgment.

Id. at 1392-93 (emphasis supplied). The Massey court recognized the general rule (from Kimball and McCurdy) that some items generally have no market value, but nonetheless instructed the jury to consider "all . . . items which reasonably appear . . . as being measures of [the property's] true value . . . ." Id. at 1393. The court intends to instruct the jury similarly at trial.[2]

---

[2] The court notes the following commentary as a helpful description of when fair market value (or secondhand value) is a more appropriate measure of damages than replacement value:
> In general, it may be expected that the secondhand price may approximate the economic value to the owner in inverse relationship to the "personal" nature of the property; that is, the gap between secondhand market price and the actual value to the owner may be expected to be more with personal clothing than with

ORDER – 7

### 2. Mr. Lee May Offer Expert Testimony; Mr. Heiden May Not.

With the above principles in mind, the court turns to two experts who seek to present testimony on the personal property damages in this case. The court concludes that Mr. Lee, Price Pfister's expert on personal property valuation, can testify at trial. Mr. Lee has extensive experience in appraising real property, and can qualify as an expert on that basis. Plaintiffs challenge Mr. Lee's testimony using factors applicable to scientific testimony under Daubert. The court finds this analysis unhelpful, as these factors have little to do with Mr. Lee's experience-based, unscientific expertise. Hankey, 203 F.3d at 1169 (noting that the "Daubert factors (peer review, publication, potential error rate, etc.) simply are not applicable" in some cases). Mr. Lee's opinions appear to address only the fair market value of Plaintiffs' personal property, and thus are not dispositive of the damages in this case. In addition, Plaintiffs argue that Mr. Lee did not properly assess the value of their personal property. The Plaintiffs can advance this argument on cross-examination, as it goes to the weight of his testimony, not its admissibility.

The court will not, however, permit James Heiden, a claims adjuster at Plaintiffs' insurance company, to offer expert testimony in this action. Mr. Heiden has not submitted an expert report nor complied with other provisions of Fed. R. Civ. P. 26. Mr. Heiden may testify only as to his personal knowledge.

---

furniture, and more with bedroom furniture than with laundry appliances.
Brendan de R. O'Byrne, Annotation, Valuation of Wearing Apparel or Household Goods Kept by Owner for Personal Use, in Action for Loss or Conversion of, or Injury to, Such Property, 34 A.L.R. 3d 816, 822 n.15 (1970).

ORDER – 8

### 3. Plaintiffs Can Offer Limited Opinion Testimony on the Value of Their Personal Property.

In addition, Price Pfister raises concerns regarding Plaintiffs' testimony on the value of their personal property.[3] The court's discussion of Mr. Kludas' opinion testimony regarding the value of his residence applies equally to Plaintiffs' testimony regarding the value of their personal property. As with real property, Washington law recognizes that the owner of personal property can offer testimony regarding its value. E.g., McCurdy v. Union Pac. R.R. Co., 413 P.2d 617, 624 (Wash. 1966). Neither Daubert nor Kumho Tire changes that principle, although they may limit the scope of a property owner's opinion testimony. Mr. and Mrs. Kludas may offer opinions on the value of their personal property that are grounded in their specialized knowledge as owners.

### 4. Plaintiffs' Spreadsheet is Inadmissible on the Record Before the Court.

Central to Plaintiffs' damages claim is a 457-item spreadsheet listing each item of personal property damaged in the flood. In denying Plaintiffs' motion for summary judgment, the court noted that Plaintiffs had provided no admissible evidence to explain the computation of damages in the spreadsheet. In response to Price Pfister's motion in limine, Plaintiffs provide evidence that they created the spreadsheet in conjunction with their insurance company. Plaintiffs compiled a list of every item damaged in the flood, along with their own estimate of the replacement or repair cost. The insurance company worked internally and with "Insurance World," a third-party that provides replacement values for household goods, to develop a spreadsheet that contained a replacement value

---

[3] Price Pfister also argued that Plaintiffs amended their estimate of personal property damage after discovery closed. The court finds Plaintiffs' response to this argument persuasive, and notes that Price Pfister failed to address Plaintiffs' response in its reply brief.

ORDER – 9

and an "actual cash value" for each item. In at least some instances, the insurance company's determination of replacement value differs from the Kludas' estimate.

On the record before the court, Plaintiffs' spreadsheet would not be admissible at trial. Plaintiffs still have not laid a foundation that would establish the meaning or accuracy of the figures presented in the spreadsheet. Plaintiffs have now established that the spreadsheet is based, in part, on values they provided to their insurance company. Those estimates would be admissible at trial, but there is no indication that the spreadsheet reflects those estimates. In order to lay sufficient foundation for the spreadsheet, Plaintiffs must provide evidence demonstrating how their estimates were used to derive the figures on the spreadsheet. Without that evidence (which presumably must come from Plaintiffs' insurance company or perhaps Insurance World), the court will not admit the spreadsheet at trial.[4]

## IV.   CONCLUSION

For the reasons stated above, the court GRANTS in part and DENIES in part each of the parties' motions in limine (Dkt. ## 38, 41, 42).

DATED this 28th day of June, 2005.

s/James L. Robart
_____
JAMES L. ROBART
United States District Judge

---

[4] Plaintiffs argue that the spreadsheet is admissible as a business record of their insurer under Fed. R. Evid. 803(6). Rule 803(6), however, is merely an exception to the general rule barring hearsay evidence. It does not serve as a substitute for laying the proper foundation for the relevance of a document.

ORDER – 10